IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH WATT,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:25-CV-02426-JJH<br><br>JUDGE JEFFREY J. HELMICK<br>UNITED STATES DISTRICT JUDGE<br><br>MAGISTRATE JUDGE<br>JONATHAN D. GREENBERG<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Kenneth Watt ("Plaintiff" or "Watt"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying his applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On November 17, 2022, Watt filed an application for POD, DIB, and SSI, alleging a disability onset date of July 29, 2021 and claiming he was disabled due to depression, anxiety, bipolar, Mounier-Kuhn syndrome, and learning disability. (Transcript ("Tr.") 110, 122.) The applications were denied initially and

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.

upon reconsideration, and Watt requested a hearing before an administrative law judge ("ALJ"). (*Id*. at 163, 169, 177, 181, 185, 231, 233.)

On September 10, 2024, an ALJ held a hearing, during which Watt, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id*. at 48-83.) On September 24, 2024, the ALJ issued a written decision finding Watt was not disabled. (*Id*. at 22-47.) The ALJ's decision became final on September 4, 2025, when the Appeals Council declined further review. (*Id*. at 1.)

On November 9, 2025, Watt filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 6, 7, 8.) Watt asserts the following assignments of error:

1. THE ALJ'S DECISION TO ELEVATE MR. WATT'S RESIDUAL FUNCTIONAL CAPACITY FROM A REDUCED RANGE OF LIGHT WORK TO MEDIUM WORK VIOLATES DRUMMOND AND IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE.

2. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

(Doc. No. 6 at pp. 6, 10.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Watt was born in 1967 and was 57 years-old at the time of his administrative hearing (Tr. 110), making him a "person of advanced age," under Social Security regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). He has a high school education. (Tr. 53.) He has past relevant work as Building Maintenance Repairer. (*Id*. at 78.)

**B. Relevant Medical Evidence**[2]

On April 12, 2018, Watt presented to a follow up appointment after being hospitalized for pneumonia and pneumothorax. (*Id.* at 465.) Watt reported "feeling great" since discharge and physical examination was normal. (*Id.*)

On October 29, 2019, Watt presented to Dr. Stienecker for a one year follow up of his Mounier-Kuhn Syndrome. (*Id.* at 443.) Watt reported moderate coughing with sputum and moderate shortness of breath with exertion. (*Id.* at 443-44.) Dr. Stienecker ordered a CT of the chest and PFT, noting maybe prescribing inhalers depending on the results of testing. (*Id.* at 443.) Watt was encouraged to exercise and stay active. (*Id.*)

On June 19, 2020, Watt presented to Dr. Holleran for a "disability visit". (*Id.* at 455.) Watt reported applying for disability based on Mournier-Kohn syndrome and anxiety. (*Id.*) Watt reported coughing with sputum and becoming moderately short of breath with exertion. (*Id.*) Dr. Holleran noted Watt was not on supplemental oxygen, does do nebulizer treatments, and uses his pulmonary percussion machine. (*Id.*)

On October 27, 2020, Watt saw Dr. Stienecker for a follow-up visit. (*Id.* at 440.) Watt denied coughing, wheezing, and shortness of breath, hospitalization, or steroid use since his last visit. (*Id.* at 441.) Physical examination was unremarkable. (*Id.*)

Watt followed up with Dr. Stienecker on October 26, 2021. (*Id.* at 606.) Watt denied coughing, wheezing, shortness of breath, hospitalization, or steroids. (*Id.* at 607.) Physical examination was normal. (*Id.*) Dr. Stienecker encouraged continued vest and nebulizer use daily to prevent mucus build up, infection, and worsening lung function. (*Id.* at 606.)

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. The undersigned notes Plaintiff's brief contains citations to the record that do not match the premise for which it is cited, as such, much of the "Factual Background" included in Plaintiff's brief is not recited here.

On April 26, 2022, Watt followed up with Dr. Stienecker after hospitalization. (*Id*. at 603.) Watt reported going to the emergency room due to an allergic reaction to his albuterol breathing treatment. (*Id*. at 604.) Watt reported doing well on his new nebulizer treatment, denied coughing or wheezing on rest or exertion, and reported mild shortness of breath on strenuous exertion and it passes quickly. (*Id*.) Physical examination was normal. (*Id*.)

On October 15, 2022, Watt presented for a one year follow up visit with Dr. Stienecker. (*Id*. at 600.) Watt denied cough, wheezing, shortness of breath, hospitalization, and steroid use. (*Id*. at 601.) Dr. Stienecker noted Watt was "still doing well with vest and nebulizers." (*Id*.) Physical examination was unremarkable. (*Id*.)

On February 16, 2023, Watt presented to the emergency department with complaints of sore throat, cough, and drainage from the nose. (*Id*. at 795.) He was discharged with a diagnosis of allergic symptoms. (*Id*. at 798.)

On July 6, 2023, Watt presented to the emergency department for chest congestion. (*Id*. at 983.) Chest x-ray and EKG were normal (*Id*. at 985.) He was diagnosed with bronchitis and prescribed antibiotics and steroids. (*Id*.)

About a week later, Watt again presented to the emergency department for cough. (*Id*. at 978.) Watt reported stopping the antibiotic due to concern for allergic reaction. (*Id*.) His coughing and congestion improved significantly since his visit one week prior. (*Id*.) Watt was concerned about the possibility of pneumothorax and requested a chest x-ray. (*Id*.) The chest x-ray was normal. (*Id*. at 980.)

On July 18, 2023, Watt presented to Dr. Stienecker for a follow up to his ER visits. (*Id*. at 924.) Watt reported mild shortness of breath while active, and denied shortness of breath at rest, coughing, and wheezing. (*Id*.) Dr. Stienecker advised Watt to "continue conservative treatment with vest and nebulized saline" and treat illness early with antibiotic and steroids if needed to prevent pneumonia. (*Id*.)

On October 24, 2023, Watt presented to Dr. Stienecker for a one year follow up. (*Id*. at 927.) Watt denied shortness of breath while active and at rest and denied coughing and wheezing. (*Id*.) Physical examination was unremarkable. (*Id*. at 928.)

On January 12, 2024, Watt presented for a follow up to a hospital visit that resulted in a heart catheterization. (*Id*. at 1155.) Watt reported doing well, denied chest pain and shortness of breath, and stated he felt steady when ambulating. (*Id*.)

**C. State Agency Reports**

**1. Mental Impairments**

On February 6, 2023, Larry Kravitz, Psy.D., reviewed the claim file and opined Watt had no limitations in understanding and memory, or concentration and persistence. (*Id*. at 117.) Dr. Kravitz found Watt had social interaction limitations and found he was moderately limited in his ability to interact appropriately with the general public and his ability to accept instructions and respond appropriately to criticism from supervisors. (*Id*. at 118.) Dr. Kravitz opined Watts had adaptation limitations and found he was moderately limited in his ability to respond appropriately to changes in the work setting. (*Id*.)

On June 25, 2023, Cindy Matyi, Ph.D., affirmed Dr. Kravitz's findings with minor clarifying changes. (*Id*. at 142.)

**2. Physical Impairments**

On March 26, 2023, Dorothy Leong, M.D., reviewed the claim file and opined Watt could occasionally lift and/or carry 50 pounds, and frequently lift and/or carry 25 pounds, stand or walk about six hours in a eight hour workday, sit for about six hours in an eight hour work day, and had no limitations except for avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation that would exacerbate pulmonary conditions. (*Id*. at 117.)

On June 14, 2023, on reconsideration, Gail Mutchler, M.D., affirmed Dr. Leong's findings. (*Id*. at 140.)

**D. Hearing Testimony**

During the September 10, 2024 hearing, Watt testified to the following:

• Watt graduated from twelfth grade and has no job certifications or training. (*Id*. at 53.) He is able to use a bank account and count change. (*Id*. at 54.) He can drive. (*Id*.) He has no problems completing self-care. (*Id*. at 55.) The last date he worked was March 13, 2020, as a building maintenance repairer. (*Id*.) He lives alone in an apartment. (*Id*. at 56.) He completes household chores daily and does his own laundry. (*Id*. at 57.) He sees his family every couple of weeks or so. (*Id*. at 57.) He does not have any pets. (*Id*. at 62.)

• His main medical issue is his lung disease which causes him to be short of breath. (*Id*. at 56.) He uses breathing machines and cannot use them at his workplace. (*Id*.) He uses breathing machines three times daily and estimates it takes about two and half to three hours of his time each day from set up to tear down. (*Id*. at 58.) He completes the breathing treatments in the beginning, middle, and end of the day. (*Id*. at 68.) He walks for exercise but has been getting short of breath recently. (*Id*. at 58.) He attends counseling for his mental health symptoms. (*Id*. at 59.) He does not currently have any reactions to medication. (*Id*.at 59.) He does not know how many pounds he can lift or for how long he can sit. (*Id*.) He has no trouble sitting. (*Id*. at 60.) He gets overwhelmed easily. (*Id*. at 63.) Cool air burns his lungs so he tries to cover his mouth and nose when it gets cold. (*Id*. at 67.)

• It is difficult for him to grocery shop because it triggers his social anxiety. (*Id*. at 60.) His mom often asks him what he needs from the store and will get it for him. (*Id*.) He does not belong to any churches, organizations, or groups. (*Id*.) He talks on the phone with his mother daily, with siblings every week or two, and never with friends. (*Id*. at 60-61.) Sometimes even being around one person causes anxiety. (*Id*. at 66.) He has experienced anxiety attacks which cause rapid heartbeat, sweaty palms, and chest pain. (*Id*.) He has been bipolar his whole life. (*Id*. at 70.) He gets overwhelmed, frustrated, and cannot focus. (*Id*.) It affects his mood. (*Id*.) Watt describes it as being stuck on a roller coaster. (*Id*.) He was prescribed a new medication, but he has not started taking it yet because he is nervous about potential side effects. (*Id*. at 71.) He sometimes has difficulty reading and spelling. (*Id*. at 72.) He sometimes has difficulty sleeping due to anxiety. (*Id*.) He thinks his anxiety, bipolar symptoms, and lung condition have all worsened since his last hearing. (*Id*. at 73.)

• He has a hobby of model car building. (*Id*. at 61.) The cars are about 10-12 inches long, and he glues them together and paints them. (*Id*. at 61.) The cars require non-toxic plastic cement that does not bother his breathing. (*Id*.) He has not worked on model cars in about a year and a half. (*Id*. at 62.) He watches movies daily in the evening. (*Id*.) Sometimes he has trouble understanding the movies, but he still watches. (*Id*. at 69.) He gets distracted easily which results in difficulty finishing tasks. (*Id*.) He is not active on social media; he

has a flip phone. (*Id*. at 62.) He stopped drinking alcohol about five years ago and stopped smoking cigarettes in 2007. (*Id*. at 63.) He has never used drugs. (*Id*.)

• He had his last job for about fifteen years. (*Id*. at 63.) The job was difficult, but he had a good boss who looked out for him. (*Id*.) He left the job because of COVID. (*Id*.) He was diagnosed with his long condition in 2018, so he worked for a couple of years after his diagnosis. (*Id*.) His job was maintenance at the township hospital. (*Id*. at 64.) When things needed to be fixed he would fix it after his boss assigned the task to him. (*Id*. at 75.)

The ALJ adopted Watt's past relevant work from the prior decision, which was Building Maintenance Repairer. (*Id*. at 76.) The ALJ then posed the following hypothetical question:

> For hypothetical number one, please assume a hypothetical individual of the Claimant's age, education, and relevant vocational background. We're going to begin at the medium-exertional level. Can do medium work except he is to avoid concentrated exposure to extreme cold and extreme heat, and humidity. He is to avoid concentrated exposure to -- I got to edit this because I missed a word. Bear with me a second. He's able to -- he is to avoid concentrated exposure to concentrated dust, odors, fumes, and other pulmonary irritants. He is able to comprehend and remember a variety of task instructions for simple tasks. He can maintain attention for simple tasks, make simple decisions, and adequately adhere to a schedule, but can do no activities that require meeting strict time limits. So, he can do no work with quotas. For example, no assembly line work. He can have occasional superficial contact with others. You know what, let me switch that to coworkers, supervisors, and the general public. That's more accurate. Superficial defined as able to be in proximity of others, able to exchange greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks. He can do no work in an environment with routine work that has infrequent changes that are gradually introduced. And I already -- he can do no supervising of others, task delegation, conflict resolution, or settling of disputes. Can the hypothetical individual I've just described perform past work as actually performed or generally performed in the national economy?

(*Id*. at 77-78.)

The VE testified the hypothetical individual would not be able to perform Watt's past work as Building Maintenance Repairer. (*Id*. at 78.) The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as Linen Room Attendant, Box Bender or Box Maker, and Rack Loader. (*Id*.)

For the second hypothetical, the ALJ changed to light exertion with all the same limits as hypothetical one. (*Id.*) The VE testified that past work was still ruled out. (*Id.*) The VE testified at the light level, jobs include Marker, Garment Sorter, and Laundry Classifier. (*Id.* at 78-79.)

For the third hypothetical, the ALJ changed to sedentary exertion level with the same limitations as hypothetical one. (*Id.* at 79.) The VE testified that past work was still ruled out. (Id.) The ALJ stated, "he grids as of AOD at sedentary" and she didn't need jobs. (*Id.*)

For the fourth hypothetical, the ALJ asked, "please assume a hypothetical individual of the Claimant's age, education, and relevant vocational background. I'm going to ask you some questions across all exertional levels. If you're off task 20% or more of the workday, is that work preclusive?" (*Id.* at 79.) The VE answered yes. (*Id.*) The VE confirmed that missing two or more days monthly is work preclusive. (*Id.*) The VE testified that using a breathing machine during a lunch break, depending on the size of the machine, might require an accommodation depending on the worksite. (*Id.* at 80.)

Watt's counsel asked the VE if a hypothetical individual required additional supervisory support on an occasional basis, up to a third of the workday or the workweek, if that would change any answers provided. (*Id.* at 80-81.) The VE responded that that sounded like job coaching and that would be considered an accommodation and not competitive employment. (*Id.* at 81.) Counsel asked whether including a sit/stand option would change any answers provided. (*Id.*) The VE explained that a sit/stand option would allow for the job examples given at light, but not at medium. (*Id.*)

**III. STANDARD FOR DISABILITY**

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent

the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Watt was insured on the alleged disability onset date, July 29, 2021, and remains insured through December 31, 2025, the date last insured ("DLI"). (Tr. 109.) Therefore, in order to be entitled to POD and DIB, Watt must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since July 29, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Mounier-Kuhn syndrome with bronchiectasis and tracheobronchomalacia; bipolar disorder; and generalized anxiety disorder(20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: He is to avoid concentrated exposure to extreme cold and extreme heat and humidity. He is to avoid concentrated exposure to concentrated dust, odors, fumes and other pulmonary irritants. He is able to comprehend and remember a variety of task instructions for simple tasks. He can maintain attention for simple tasks, make simple decisions and adequately adhere to a schedule but can do no activities that require meeting strict time limits so he can do no work with quotas, for example no assembly line work. He can have occasional superficial contact with coworkers, supervisors and the general public, superficial defined as, able to be in proximity of others, able to exchange

greetings, and able to engage in discussions that do not require persuasion or involve tandem tasks. He can do work in an environment with routine work that has infrequent changes that are gradually introduced. He can do no supervising of others, task delegation, conflict resolution or setting of disputes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 23, 1967 and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 29, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 25-41.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A. Prior Unfavorable Decision.

In his first assignment of error, Watt argues the ALJ erred when it found Watt capable of performing medium work, which is a higher exertional level than the light work found by the prior ALJ decision. (Doc. No. 6, pp. 6-10.) Watt contends the ALJ's finding does not follow the requirements of the *Drummond/Earley* framework. (*Id*. at 7.) Watt asserts the ALJ's explanation for departing from the prior RFC does not meet the *Earley* standard because the ALJ did not identify the new evidence considered and how it demonstrates changed functional capacity. (*Id*. at 8.)

In response, the Commissioner argues that the ALJ followed Sixth Circuit precedent, acknowledging the prior ALJ's findings while giving a "fresh review" as required by *Earley*. (Doc. No. 7 at 7-9.) The Commissioner contends Watt's statement that *Earley* requires the ALJ to identify specific new evidence and explain how it demonstrates changes functional capacity should be rejected because *Earley* does not impose such a requirement. (*Id*. at 9.)

Watt filed a Notice of Errata, correcting language he cited in his brief at page seven attributed to *Earley* that did not accurately reflect the decision's wording. (Doc. No. 8.)

This Court explained the *Drummond* and *Earley* framework as follows:

> In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997) (relying on *Senters v. Sec'y of Health & Human Servs.*, No. 91–5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991) (per curiam). *See also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015). In response, the Commissioner issued AR 98-4(6), which bound ALJs deciding a second disability claim to the prior ALJ's findings "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." 1998 WL 283902, at *3.
>
> The Sixth Circuit clarified the scope *of Drummond* in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). *Earley* made clear that new regulatory framework for determining disability is a changed circumstance justifying departure from a prior ALJ's ruling, and explicitly stated that because "human health is rarely static.... Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Earley*, 893 F.3d at 932-33.

*Bowker v. Comm'r of Soc. Sec.*, No. 5:23-CV-00990-JDG, 2024 WL 733411, at *13 (N.D. Ohio Feb. 22, 2024).

Here, the ALJ acknowledged Watt's prior unfavorable ALJ decision, writing:

> There was a prior application for benefits under Title II, which resulted in an unfavorable decision by Administrative Law Judge Earl Ashford, on July 28, 2021 (B1A). In accordance with Acquiescence Rulings 98-3(6) and 98-4(6), the undersigned is bound by the previous findings and determinations, including any findings of fact regarding the claimant's severe impairments, unless there is new and material evidence or a showing of "changed circumstances" relating to a determination of the present claim. These strictures will be discussed where appropriate.

(Tr. 23.) The ALJ recognized new and material evidence throughout, specifically noting that AR 98-4(6) did not apply. (*See id.* at 25, 26, 27.) The ALJ considered the past RFC finding, writing:

> In the prior decision, the claimant was found to have the residual functional capacity for a reduced range of light work with frequent climbing of ramps and stairs, frequent stooping, kneeling, crouching, and occasional crawling,

> environmental limitation to avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights, additional environmental limitation to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases, limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes, and occasional interaction with the general public, coworkers, and supervisors (B1A). **There are more current records, containing new and material evidence regarding the claimant's severe impairments, as previously noted, and thereby warranting changes in the claimant's residual functional capacity.**

(*Id*. at 38, emphasis added.) The ALJ went on to summarize the evidence in a well-reasoned and thorough explanation. (*Id*. at 38-39.)

The ALJ properly followed Sixth Circuit precedent. The ALJ acknowledged the prior ALJ decision and, after giving the claim a fresh look, determined there was new and material evidence regarding Watt's severe impairments warranting changes to the RFC.

There is no error.

**B. RFC Determination.**

In his second assignment of error, Watt argues the RFC determination is not supported by substantial evidence. (Doc. No. 6 at 10.) Watt contends he lacks the ability to stand and walk six hours out of an eight-hour workday, thus, he cannot perform medium work as the ALJ found. (*Id*. at 11.) Watt claims the record documents breathing difficulties, so the record does not support a finding that Watt can perform the walking requirement of medium work. (*Id*. at 12.)

In response, the Commissioner argues substantial evidence supports the ALJ's finding that Watt could perform medium work. (Doc. No. 7 at 9.) The Commissioner notes the state agency physicians determined Watt could perform medium work, and state agency opinions alone are substantial evidence to support a claimant has not met a listing. (*Id*. at 10.) The Commissioner points out the ALJ cited two years of Watt's pulmonology records that had unremarkable findings. (*Id*.) The Commissioner claims Watt cited

records to support his argument, but the records cited do not support what he claims. (*Id*. at 10-11.) The Commissioner argues that Watt pointing to other evidence without challenging the ALJ's rationale is improperly asking the Court to reweigh the evidence. (*Id*. at 11.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 404.1527(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all the relevant evidence (20 C.F.R. § 404.1546(c)) and must consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96–8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, the claimant bears the burden of establishing the impairments that determine her RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*,

99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin*, No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (*accord*). However, courts have not hesitated to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *See e.g., Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports"). *See also Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio April 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874, at *6 (N.D. Ohio March 11, 2013) ("It is generally recognized that an ALJ 'may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.'"); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

In the RFC analysis, the ALJ analyzed Watt's ability to be physical active throughout the decision. The ALJ wrote:

> However, the claimant underrates his own abilities, as indicated in his activities of daily living, as the claimant has remained active during the relevant period. [ . . .] He enjoys spending time with his family, assisting others as he is able, and likes to take walks and exercise (B12F/1, dated January 31, 2023). In November 2023, the claimant was staying active including walk, bike rides, and lifting weights (B18F/19). He continued to have greater use of positive coping skills as he made it a point to stay more active in taking bike rides and lifting weight mores [sic] when the weather was not as nice for rides (B18F/19-20). He really enjoyed getting out for trick or treating with a couple of his grandkids this year (B18F/20). The

> claimant continued to stay active walking and lifting weights (B18F/2, dated January 18, 2024).

(Tr. 35.) The ALJ went on to state she considered all the evidence, including limitations and restrictions imposed by Watt's impairments when she limited him to a reduced range of medium work. (*Id.* at 39.) The ALJ specified that she "considered the claimant's respiratory impairments and possible difficulties the claimant may encounter with lifting, carrying, standing, and walking." (*Id.*) The ALJ explained:

> Throughout the relevant period, the claimant has remained very active, which the claimant related was a way to cope and manage his moods. He enjoyed taking walks and lifting weights (B18F/1, dated January 18, 2024; See also B18F/2, 12, 14, 15, 16, 19, and 20). In February 2024, the claimant reported the best thing he can do to manage his anxiety is remain active, work out on a regular basis, and use positive self-talk (B18F/24). He loved going on bike rides and lifting weights regularly and always feels better once he has been more active (B18F/15-16). As recently as July 2024 and August 2024, the claimant disclosed that any physical activity, such as taking a walk, going for a bike ride, or working out helps his mood (B18F/41-42, dated July 22, 2024, and B18F/43-44, dated August 12, 2024; See also B18F/15, and 16).

(*Id.*)

Substantial evidence supports the RFC findings. The ALJ considered Watt's testimony concerning his physical impairments, as well as medical records, activities of daily living, and the state agency physicians' opinions. (*Id.* at 30-39.) In doing so, the ALJ properly considered several findings that undercut Watt's disability. *Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971)). \

While Watt interprets the records differently, the findings of the ALJ "are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton*, 246 F.3d at 772-73 (6th Cir. 2001). In the Sixth Circuit an ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as

substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Again, it is the ALJ's job to weigh the evidence and resolve conflicts, and she did so here. While Watt would weigh the evidence differently, it is not for the Court to do so on appeal.

There is no error.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

Date: October 14, 2026

*s/ Jonathan Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**